FILED

MAR 1 7 2021

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No.: SA-21-CR- |
| v. | **INDICTMENT** |
| MICHAEL ANGELO PADRON, | COUNT 1: 18 U.S.C. §371<br>Conspiracy |
| Defendant. | COUNTS 2-9: 18 U.S.C. §1343<br>Wire Fraud |

# SA21CR0124OG

THE GRAND JURY CHARGES THAT:

At all times relevant to this Indictment, unless otherwise stated:

## COUNT ONE
### (Conspiracy - 18 U.S.C. § 371)

1.      From on or about no later than April 16, 2004, and continuing thereafter until on or about at least November 22, 2017, in the Western District of Texas, the defendant

MICHAEL ANGELO PADRON

and others known and unknown to the Grand Jury, knowingly and willfully conspired and agreed together and with each other to (A) commit an offense against the United States, to wit, wire fraud, 18 U.S.C. § 1343; (B) defraud the United States by obtaining money from the United States, and agencies thereof, by means of false and fraudulent pretenses, representations, and promises; and (C) defraud the United States and agencies thereof, to wit, the Small Business Administration, by interfering with its lawful functioning.

## INTRODUCTION

2.      The Small Business Administration ("SBA") was an agency of the United States. The SBA was authorized by law to develop programs and promulgate regulations to assist small businesses, including by having programs that offered contracts set aside for certain business owners, such as small businesses owned and controlled by service disabled veterans and socially and economically disadvantaged individuals, commonly referred to as "set-aside programs" and their "set-aside contracts."

3.      The SBA's Service Disabled Veteran Owned Small Business ("SDVOSB"), and 8(a) programs were among such "set-aside" programs that offered such "set-aside" contracts.

4.      The SBA's SDVOSB program's purpose was to increase the number of government contracts awarded to small businesses owned and controlled by service disabled veterans. To qualify as an SDVOSB, a company, among other things, was required to have been owned and controlled by a service disabled veteran ("SDV"), that is, a United States veteran with a disability that was incurred in the line of duty in the active military, naval, or air service. Small businesses that are owned and controlled by service-disabled veterans are known as SDVOSBs. A qualified SDVOSB was eligible to receive government contracts that were only available to SDVOSBs.

5.      The SBA's 8(a) program provided business development assistance to socially and economically disadvantaged small businesses, including help in obtaining federal contracts set aside for businesses that qualified under the 8(a) program. To qualify for contracts set aside under the 8(a) program, a company, among other things, was required to have been owned and controlled by a United States citizen who met the SBA's definition of being socially and economically

disadvantaged. If a company qualified for the 8(a) program, it was eligible to receive government contracts that were only available to 8(a) businesses.

6.      For a business to qualify for contracts set-aside for a SDVOSB, 8(a) business, or any other small business, it must qualify under SBA rules as a "small business."

7.      By law, a small business is owned by a qualifying person when the person unconditionally and directly owns at least 51% of the business.

8.      By law, a small business is controlled by a qualifying person when the person (1) conducts the long-term decision-making, (2) conducts the day-to-day management and administration of the business operations, (3) holds the highest officer position in the business, and (4) has managerial experience of the extent and complexity needed to run the business. The qualifying person must also manage the business on a full-time basis working normal hours typical of that business.

## DEFENDANT AND CO-CONSPIRATORS

9.      Company M, a Texas Corporation in the construction business, claimed 8(a) status to obtain federal government 8(a) set-aside and sole-source contracts from approximately May 1998 through to approximately May 2007. After 2007, Company M was no longer qualified to compete for contracts set aside under the 8(a) program. Company M continued to conduct business with the federal government, but not as a company with 8(a) status.

10.     Company BH, a Texas Limited Liability Company in the construction business, claimed SDVOSB status to obtain federal government small business and SDVOSB contracts, from at least 2004 through to at least January 2018.

11.     Company JV, a Texas Limited Liability Company in the construction business, claimed 8(a) status to obtain federal government small business and 8(a) contracts from at least October 2006 through to at least October 2015.

12.     Company MC, a Texas Limited Liability Company in the construction business, claimed 8(a) status to obtain federal government small business and 8(a) contracts from at least 2009 through to at least January 2018.

13.     Company F, a Texas Limited Liability Company in the construction business, was formed in approximately 2010 to provide services to Company BH; Company M; and other companies affiliated with MICHAEL ANGELO PADRON and Michael Wibracht, including Company JV and Company MC.

14.     MICHAEL ANGELO PADRON ("PADRON"), was at various times during the relevant period a part-owner of Company M, Company F, and Company BH.

15.     Michael Wibracht was, at various times during the relevant period, part owner of Company M, Company F, and Company BH.

16.     Ruben Villarreal was, at various times during the relevant period, identified on paper as the majority or sole owner of Company BH.

17.     Various entities and individuals, not made defendants in this Indictment, participated as co-conspirators in the offense charged herein and performed acts and made statements in furtherance thereof.

18.     Whenever in this Indictment reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or other representatives while they were actively engaged in the management, direction, control or transaction of its business or affairs.

4

## OBJECTS OF THE CONSPIRACY

19.     The essential objects of the conspiracy were for PADRON and Michael Wibracht, and others known and unknown to the Grand Jury, to:

      a.     Use or cause to be used interstate wire communications in the execution of a scheme to defraud in violation of 18 U.S.C. § 1343;

      b.     Defraud the United States by obtaining money from the United States, and agencies thereof, by means of false and fraudulent pretenses, representations, and promises; and

      c.     Defraud the United States of and concerning its governmental functions and rights, by interfering with the lawful function of the SBA, and other government agencies, by deceit, craft, trickery, and means that were dishonest, including fraudulently securing through Company BH valuable government contracts set aside for small businesses from U.S. government agencies, when PADRON and Michael Wibracht and their businesses were not eligible to obtain those contracts, thereby impeding, impairing, defeating, and obstructing the lawful function of the SBA and other government agencies.

20.     Beginning at least as early as April 16, 2004, PADRON knowingly entered into and engaged in the conspiracy with Michael Wibracht and others; the conspiracy lasted until at least November 22, 2017.

## MANNER AND MEANS

21.     For the purpose of carrying out the charged conspiracy, PADRON, Michael Wibracht, and other co-conspirators who are known and unknown to the Grand Jury:

a. Identified persons who would qualify for SDVOSB, 8(a), and other small business programs, and established those persons as the ostensible owners of construction companies, including Company BH, Company JV, and Company MC;

b. Held out two different service-disabled veterans, one of whom was Ruben Villarreal, as the majority or sole owners of Company BH.

c. Held out Company BH to the SBA and other federal government agencies as qualified for set-aside contracts, when in truth and in fact Company BH was not qualified due to its control by PADRON and Michael Wibracht, and affiliation with other companies controlled by PADRON and Wibracht;

d. Solicited set-aside contracts from the federal government through bids submitted by Company BH;

e. Exercised disqualifying financial and operational control over Company BH;

f. Made false statements and representations to the contracting federal government agencies about the qualifications of Company BH;

g. Concealed that PADRON and Michael Wibracht, persons not eligible as business owners for SBA contracting preferences, exercised disqualifying control over Company BH;

h. Concealed from the contracting federal government agencies the disqualifying control that non-qualifying, affiliated companies, Company F and Company M, and other companies controlled by PADRON and Michael Wibracht, exercised over Company BH;

i.      Made false statements to federal government agencies to conceal that Company BH, Company M, and Company F were affiliated, and that Company BH, therefore, exceeded the size limitations for small businesses and was ineligible for set-aside contracts;

j.      Caused to be transmitted wire communications in interstate commerce, including but not limited to e-mails, certifications, and invoices to agencies of the United States, and money transfers from agencies of the United States; and

k.      Obtained millions of dollars for Company BH in set-aside contracts as a result of false, misleading, and concealed conduct.

## OVERT ACTS

22.     Within the Western District of Texas and elsewhere, in furtherance of the above described conspiracy, and in order to carry out the objects thereof, PADRON, Michael Wibracht, and other co-conspirators, known and unknown to the Grand Jury, committed the following overt acts, among others:

a.      On or about April 16, 2004, caused the organization of Company BH, identifying a service-disabled veteran as the manager and majority owner of Company BH, and identifying PADRON and Michael Wibracht as part-owners of Company BH;

b.      In or about 2004, caused the organization of Company JV, and established as the ostensible owner of Company JV an individual who would appear to qualify under the government's 8(a) set-aside program;

c.      On or about January 1, 2008, created documents reflecting that Ruben Villarreal was the majority owner of Company BH, thereby replacing another service-disabled veteran as the ostensible majority owner of Company BH;

7

d.      In or about 2008, caused the organization of Company MC, and established as the ostensible owner of Company MC an individual who would appear to qualify under the government's 8(a) set-aside program;

e.      On or about September 30, 2008, caused Company M, Company BH, Company JV, and Company MC to enter into an indemnity agreement in order to obtain bonding from a surety for construction projects, whereby PADRON and Michael Wibracht indemnified the surety on behalf of Company BH; and PADRON agreed to indemnify the surety on behalf of Company JV and Company MC;

f.      On or about August 13, 2009, created documents reflecting that Villarreal was the sole owner of Company BH;

g.      On or about September 1, 2013, caused Company M, Company F, Company BH, Company JV, and Company MC to enter into an indemnity agreement in order to obtain bonding from a surety for construction projects, whereby PADRON, Company M, and Company F agreed to indemnify the surety on behalf of Company BH, Company JV, and Company MC;

h.      On or about September 13, 2013, and September 18, 2013, in connection with a bid protest against Company BH concerning an SDVOSB contract with the United States Department of Veteran Affairs worth more than $20 million, caused Company BH to prepare and submit to the SBA a document signed by Ruben Villarreal, which contained false statements regarding Company BH's affiliation with PADRON, Michael Wibracht, Company M, and Company F;

8

i.      On and between approximately April 25, 2006 and December 1, 2017, caused Company BH to enter into set-aside contracts with federal agencies, resulting in Company BH receiving contracts valued at approximately $250 million in federal funds;

j.      On and between approximately April 13, 2007 and November 3, 2017, caused Company JV to enter into set-aside contracts with federal agencies, resulting in Company JV receiving contracts valued at approximately $190 million in federal funds;

k.      On and between approximately May 29, 2009, and May 4, 2018, caused Company MC to enter into set-aside contracts with federal agencies, resulting in Company MC receiving contracts valued at approximately $60 million in federal funds;

l.      On numerous occasions, caused to be transmitted e-mails, certifications, invoices, money transfers, and other wire communications in interstate commerce, including but not limited to those referenced in Paragraph 29; and

m.      On or about November 22, 2017, caused Company BH to receive final payment of approximately $74,431.72 from the United States Department of Veteran Affairs on a SDVOSB contract worth more than $20 million.

ALL IN VIOLATION OF TITLE 18, UNITED STATES CODE, SECTION 371.

### COUNTS TWO THROUGH NINE
#### (Wire Fraud, 18 U.S.C. § 1343)

23.     The grand jury realleges and incorporates by reference Paragraphs 1 through 22 of the Indictment as if fully set forth herein.

24.     Various corporations and individuals, not made defendants in this Indictment, participated as co-schemers in the offense charged herein and performed acts and made statements in furtherance thereof. These co-schemers are both known and unknown to the Grand Jury.

25.     From on or about no later than April 16, 2004, and continuing thereafter until on or

about at least November 22, 2017, in the Western District of Texas and elsewhere, the defendant

MICHAEL ANGELO PADRON

and others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised and intended to devise a scheme and artifice to defraud the United States of money and property, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, knowing they were false and fraudulent when made, for the purpose of executing such scheme and artifice and attempting to do so.

## OBJECT OF THE SCHEME

26.     The purpose of the scheme and artifice to defraud was for PADRON to unlawfully enrich himself and others by fraudulently securing valuable government contracts set aside for qualified businesses from U.S. government agencies when their businesses were not eligible to obtain those contracts; and obtain money from the United States, and agencies thereof, by means of false and fraudulent pretenses, representations, and promises.

## MANNER AND MEANS

27.     The manner and means by which PADRON, together with others, known and unknown to the Grand Jury, sought to accomplish the purpose of the scheme and artifice to defraud included, among other things, the manner and means set forth in Paragraph 21 of the Indictment.

28.     In furtherance of the scheme, PADRON, together with others, by interstate wire, caused to be sent items such as e-mails, and caused to be received items such as money transfers.

## EXECUTION OF THE SCHEME

29.     On or about the dates stated below, in the Western District of Texas and elsewhere, PADRON, together with others, for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds,

including e-mails, certifications, invoices, and money transfers, described below for each count, each transmission constituting a separate count:

| Count | Approximate Date | Description |
|-------|------------------|-------------|
| 2 | Aug. 18, 2016 | Email from Villarreal to Department of Veterans Affairs authorizing employees of Company F to act on behalf of Company BH |
| 3 | Sept. 23, 2016 | Electronic certification for Company BH submitted on SAM.gov by, or on behalf of, Ruben Villarreal certifying Company BH as a small business concern |
| 4 | Oct. 8, 2016 | $489,185.41 electronic invoice from Company BH to U.S. Department of Veterans Affairs |
| 5 | Dec. 2, 2016 | $73,256.25 electronic invoice from Company BH to U.S. Department of Veterans Affairs |
| 6 | Nov. 16, 2017 | $74,431.72 electronic invoice from Company BH to U.S. Department of Veterans Affairs |
| 7 | Oct. 13, 2016 | Wire relating to the $489,185.41 transfer of funds from U.S. Treasury to BBVA account ending in ***0083 |
| 8 | Dec. 9, 2016 | Wire relating to the $158,860.17 transfer of funds from U.S. Treasury to BBVA account ending in ***0083 |
| 9 | Nov. 22, 2017 | Wire relating to the $74,431.72 transfer of funds from U.S. Treasury to BBVA account ending in ***0083 |

ALL IN VIOLATION OF TITLE 18, UNITED STATES CODE, SECTION 1343.

## NOTICE OF UNITED STATES' DEMAND FOR FORFEITURE
[*See* Fed.R.Crim.P. 32.2]

### I.

### Conspiracy and Wire Fraud Violations and Forfeiture Statutes
[Title 18 U.S.C. §§ 371, 1343, subject to forfeiture pursuant to Title 18 U.S.C. § 981(a)(1)(C), made applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c)]

As a result of the criminal violations set forth in Counts One through Nine, the United States gives notice to defendant MICHAEL ANGELO PADRON of its intent to seek the forfeiture of certain property upon conviction pursuant to Fed. R. Crim. P. 32.2 and to Title 18 U.S.C. § 981(a)(1)(C), made applicable to criminal forfeiture by Title 28 U.S.C. § 2461, which states:

### Title 18 U.S.C. § 981. Civil forfeiture

(a)(1) The following property is subject to forfeiture to the United States:

* * *

(C) Any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

Wire Fraud is an offense constituting "specified unlawful activity" as defined in Title 18 U.S.C. § 1956(c)(7)(A).

### Title 28 U.S.C. § 2461.

(c) If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure . . . .

## II.

## Money Judgment

A sum of money which constitutes, or is derived from, proceeds traceable to the violations set forth in the Counts referenced above for which MICHAEL ANGELO PADRON is solely liable.

## III.

## Substitute Assets

If any of the property described above as being subject to forfeiture for the violations set forth above, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;
    b.    has been transferred or sold to, or deposited with, a third party;
    c.    has been placed beyond the jurisdiction of the court;
    d.    has been substantially diminished in value; or
    e.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America to seek forfeiture of any other property, up to the value of the money judgment, as substitute assets pursuant to Title 21 U.S.C § 853(p) and Fed. R. Crim. P. 32.2(e)(1).



A TRUE

FOREPERSON

RICHARD A. POWERS
Acting Assistant Attorney General
Antitrust Division
U.S. Department of Justice

JAMES J. FREDRICKS
Chief, Washington Criminal II Section
Antitrust Division
U.S. Department of Justice

MARVIN N. PRICE, JR
Director of Criminal Enforcement
Antitrust Division
U.S. Department of Justice

MATTHEW STEGMAN
D.C. Bar No. 1015677

HEATHER CALL
DANIEL E. LIPTON
Trial Attorneys
Antitrust Division
U.S. Department of Justice
Washington Criminal II Section
450 5th Street, N.W.
Washington DC 20530
Tel: (202) 598-8381
matthew.stegman@usdoj.gov